UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

PERRY PIERCE,

        Plaintiff,

v.

KAREN THOMAS et al.,

        Defendants.
_____/

Case No. 1:22-cv-1167

Honorable Ray Kent

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Berrien County Jail in St. Joseph, Michigan. Plaintiff sues Head Nurse Karen Thomas and Nurse A. Welder.

Plaintiff alleges that on November 20, 2022, he told Defendant Welder that he was experiencing severe pain in his lower left side, and that it was the same type of pain he experienced when he had kidney stones the year before. (ECF No. 1, PageID.3.) About an hour and a half later,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Defendant Welder called Plaintiff to the nursing station. (*Id.*) She checked Plaintiff's vitals and told him there was nothing wrong with his vital signs. (*Id.*, PageID.3–4.) Plaintiff responded that there would be nothing wrong with his vitals because his pain was "in [his] lower left side and going down to [his] penis." (*Id.*, PageID.4.) Defendant Welder told Plaintiff that she wanted to take a urine sample; Plaintiff responded that he could not urinate and told Defendant Welder to "go ahead and do the [catheter] procedure." (*Id.*) Defendant Welder told Plaintiff that she was not going to do that and sent Plaintiff back to his housing unit with the sample collection cup. (*Id.*)

Later that day, an officer (not a party) came to Plaintiff's housing unit and told Plaintiff to pack his property. (*Id.*) Plaintiff was moved to the holding tank about two and a half hours after complaining to Defendant Welder about his pain. (*Id.*) Plaintiff was told that he was placed in the holding tank for observation. (*Id.*, PageID.5.) About two hours after he was placed in the holding tank, Plaintiff started throwing up because "the pain was so severe." (*Id.*) Other inmates in the tank pressed the call button and told the officer that Plaintiff needed medical attention. (*Id.*) Defendant Welder arrived forty minutes later and told the officer that Plaintiff needed to be sent to the hospital. (*Id.*) Plaintiff contends "this was 4 [hours] after [he] had complain[ed] to [Defendant Welder] about having severe pain." (*Id.*)

Plaintiff was taken to the Spectrum Lakeland Hospital. (*Id.*) The nurse there told Plaintiff that Defendant Welder told them that Plaintiff was having issues with his gallbladder. (*Id.*) Plaintiff said that he was having pain in his lower left side, and the nurse told him that it could not be his gallbladder. (*Id.*) Plaintiff received a CAT scan, and the attending physician told Plaintiff that he had kidney stones and a mass on his kidney that was possibly cancerous. (*Id.*, PageID.6.) Prior to being released from the hospital, the nurse gave Plaintiff "a strainer and a biohazard bag." (*Id.*) She told Plaintiff to urinate in the strainer to catch the kidney stone and to keep the stone in the

4

biohazard bag so that nursing staff at the jail could send it to the hospital for testing. (*Id.*) The nurse told Plaintiff that she was sending that order "back to the jailhouse nurse explaining to her the same instructions." (*Id.*) Later that day, Plaintiff expelled the kidney stone and gave it to Defendant Welder. (*Id.*)

Two days later, on November 22, 2022, Defendant Welder was making medication rounds, and Plaintiff asked her if she had sent the stone to the hospital for testing. (*Id.*) Defendant Welder responded that she had thrown it away "because [Defendant] Karen Thomas . . . said they don't do that here." (*Id.*, PageID.6–7.) Plaintiff filed a grievance against Defendant Welder for throwing away the kidney stone. (*Id.*, PageID.7.)

On November 23, 2022, Defendant Thomas came to see Plaintiff. (*Id.*) Plaintiff asked her why she told Defendant Welder to throw away the kidney stone. (*Id.*) Defendant Thomas responded that they "threw it away because the hospital didn't tell them to send it back to get tested." (*Id.*) Plaintiff contends that even if that were true, Defendant Thomas, as the head nurse, should have known "that the kidney stone should be tested to further prevent [Plaintiff] from suffering from severe pain from kidney stones in the future." (*Id.*)

Based upon the foregoing, Plaintiff contends that Defendants violated his constitutional rights by failing to adequately respond to his serious medical needs. Plaintiff seeks damages and a transfer to another facility so that he can "get [his] medical needs properly addressed." (*Id.*, PageID.8.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

5

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*,

6

894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). The application of the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). Because Plaintiff does not specify the nature of his custody, the Court considers Plaintiff's claim under both the Eighth and Fourteenth Amendment standards.[2]

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

---

[2] Plaintiff vaguely references the Fifteenth Amendment in his complaint. (ECF No. 1, PageID.7.) That amendment states: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude." *See* U.S. Const. amend. XV, § 1. The provisions of this amendment are in no way implicated by the events described in Plaintiff's complaint. Accordingly, any purported Fifteenth Amendment claims will be dismissed.

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Until recently, the Sixth Circuit applied the Eighth Amendment's prohibition on cruel and unusual punishment to Fourteenth Amendment claims for inadequate medical care as well, requiring that a plaintiff demonstrate both the objective and subjective elements of deliberate indifference. *See Trozzi v. Lake Cnty.*, 29 F.4th 745, 751–52 (6th Cir. 2022) (discussing case history for the Eighth Amendment's deliberate indifference standard). However, after the Supreme Court's opinion in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which eliminated the subjective element of a pretrial detainee's excessive force claim, in *Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021), the Sixth Circuit "modified the subjective prong as follows: 'A pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Helphenstine v. Lewis Cnty., Ky.*, No. 22-5407, 2023 WL 1859890, at *5 (6th Cir. Feb. 9, 2023) (quoting *Brawner*, 14 F.4th at 596). Notably, the Sixth Circuit "appl[ied] *Kingsley*'s reasoning to claims alleging inadequate medical care[, b]ut . . . stopped short of fully *eliminating* the subjective injury." *Trozzi*, 29 F.4th at 752–53 (emphasis in original) (quoting *Brawner*, 14 F.4th at 591). Thus, for purposes of an inadequate medical care claim under the Fourteenth Amendment, a "plaintiff must show (1) that [he or she] had a sufficiently serious medical need and (2) that each defendant 'acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine*, 2023 WL 1859890, at *6 (quoting *Brawner*, 14 F.4th at 596).

Kidney stones are certainly a serious medical need. *See Thomas v. Webb*, 39 F. App'x 255, 256 (6th Cir. 2002). Plaintiff's complaint, however, does not contain facts from which the Court can infer an Eighth or Fourteenth Amendment violation. Plaintiff alleges that when he told

Defendant Welder about his pain, she called him to the nursing station an hour and a half later. Defendant Welder checked his vitals and gave Plaintiff a urine collection cup for a sample. Shortly thereafter, Plaintiff was moved to the holding tank for observation. Two hours after he was moved, he started throwing up from the pain. When Defendant Welder arrived, she told the officer that Plaintiff needed to go to the hospital. Although Plaintiff faults Defendant Welder for not giving him any pain medication when she sent him back to his housing unit with the urine collection cup, the facts alleged by Plaintiff in no way rise to the level of either deliberate indifference or reckless disregard of Plaintiff's medical needs by Defendant Welder. At most, Plaintiff alleges a difference in judgment with how Defendant Welder approached Plaintiff's condition. Such a difference in judgment is insufficient to state a claim for inadequate medical care under the Constitution. *See Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). Moreover, Plaintiff's complaint is devoid of facts suggesting that he suffered any further detrimental effect from the four-hour delay from when he reported his pain to when he was sent to the hospital. *See Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

Plaintiff faults Defendant Thomas for telling Defendant Welder to throw away his kidney stone instead of having it sent to the hospital for testing. He suggests that as head nurse, Defendant Thomas "should know that the kidney stone should be tested to further prevent [Plaintiff] from suffering from severe pain from kidney stones in the future." (ECF No. 1, PageID.7.) Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Thomas either was deliberately indifferent or acted with reckless disregard to Plaintiff's kidney stones. At most, Plaintiff's complaint against Defendant Thomas sounds in negligence, which does not rise to the level of an Eighth or Fourteenth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 106

9

(1976) (noting that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Although the hospital staff recommended that the stone be tested, Plaintiff "ha[s] no constitutional right to receive a particular or requested course of treatment." *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The Court recognizes that Plaintiff suffered severe pain from his kidney stones. His complaint, however, fails to state a claim against Defendants that rises to the level of a plausible violation of either the Eighth or Fourteenth Amendment. Plaintiff was seen by Defendant Welder and was ultimately sent to the hospital when he vomited in the observation cell. Moreover, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Thomas was deliberately indifferent or acted with reckless disregard to Plaintiff's kidney stones by throwing the stone away instead of having it returned to the hospital for testing. For the reasons set forth above, Plaintiff's complaint will be dismissed for failure to state a claim against Defendants.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   February 27, 2023                              /s/ Ray Kent
                                                        Ray Kent
                                                        United States Magistrate Judge